**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| BOWMAN, HEINTZ, BOSCIA & VICIAN, P.C. | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:13 CV 0079 |
| v. | ) ) | |
| VALIANT INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Bowman, Heintz, Boscia & Vician, P.C. ("Bowman Heintz") has sued its

malpractice insurer, Valiant Insurance Company, claiming that it has failed to provide

coverage in a dispute involving bankruptcy litigation pending in the Middle District of

Florida. Bowman Heintz seeks damages associated with defending itself in the Florida

bankruptcy litigation, attempting to resolve and settle the Florida bankruptcy litigation,

punitive damages for failing to defend Bowman Heintz, as well as a declaratory judgment

that Valiant is in default under the insurance policy for a failure to defend. Valiant has

responded with a counterclaim of its own, seeking a declaratory judgment that Bowman

Heintz has not incurred damages as defined under the policy and that Bowman Heintz has

not followed the notice provisions of the Insurance Policy.

Before the Court are Bowman Heintz's Motion for Partial Summary Judgment

[DE 19], supporting memorandum [DE 20], and supporting exhibits [DE 21], all filed on

January 15, 2014; Valiant's cross-motion for summary judgment [DE 22], statement of

uncontested facts and supporting exhibits [DE 23], also filed on January 15, 2014; the

parties' responses to the motions for summary judgment, filed on February 18, 2014 [DE

24; DE 25], and their replies to the motions, filed on March 4, 2014 [DE 28; DE 29].  For

the reasons below, Bowman Heintz's motion for summary judgment [DE 19] is

**DENIED**, and Valiant's cross-motion for summary judgment is **GRANTED** [DE 22].

I.      Factual Background

This matter involves six separate lawsuits, a bankruptcy, and two separate claims

for malpractice coverage.  Specifically, it's a dispute about golf courses at Fiddler's

Creek, a planned residential community in Collier County, Florida, located between

Naples and Marco Island, which includes a number of residences, amenities, and, as most

pertinent to this litigation, two golf courses [DE 21-8 at ¶¶ 15-20].

Bowman Heintz is the named insured under Valiant's Lawyers Professional

Liability Insurance Policy, Policy No. INV00015580, with a policy period of May 12,

2009 through May 12, 2010 [DE 21-5].  Bowman Heintz is also the named insured under

the renewal of the policy, with a policy period of May 12, 2010 to May 12, 2011 [DE 21-

6].

The pertinent portions of the policy at issue here state as follows:

I.A.    Coverage

The **Company** will pay on behalf of the **Insured** sums in excess of the
deductible that the **Insured** shall become legally obligated to pay as
**damages** because of a **claim** that is first made against the **Insured** and
reported to the **Company** during the **policy period** or any Extended
Reporting Period arising out of an act or omission in the performance of
**legal services** by the **Insured** or by any person for whom the **Insured** is
legally liable, provided that:

1.      prior to the inception date of the **policy period**, the **Insured** did
        not give notice under any other insurance policy of such **claim** or
        **related claim** or such act or omission or **related act or omission**;
        and

2.    prior to the inception date of the first policy issued by the **Company**, if continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

The **Company** shall also pay **claim expenses** in connection with such **claim**.

\*\*\*

II.D.   Damages

**"Damages"** means judgments, awards and settlement is [sic] negotiated with the assistance and approval of the **Company. Damages** do not include:

\*\*\*

1.    Legal fees, costs and expenses paid to or incurred or charged by the **Insured**, whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

\*\*\*

3.    civil or criminal fines, sanctions, penalties, or forfeitures, whether pursuant to federal, state, or local law;

\*\*\*

II.M.   Related Claim
**"Related claim"** means all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services.**

\*\*\*

V.A.   Notice of claims and potential claims

1.    The **Insured**, as a condition precedent to obligations of the **Company** under this, shall give written notice to the **Company** during the **policy period:**

a.   of any **claim** made against the **Insured** during the **policy period**;

b.  of the **Insured's** receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the **Insured** responsible for any alleged breach of duty.

2.  If during the **policy period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** during the **policy period** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

a.  the specific act or omission;

b.  the date(s) and person(s) involved;

c.  the identity of anticipated or possible claimants;

d.  the circumstances by which the **Insured** first became aware of the possible **claim**;

then any such **claim** that is subsequently made against the **Insured** arising out of such act or omission and reported to the **Company** shall be deemed to have been made at the time such written notice was received by the **Company**.

***

The **Company** shall have the right and duty to defend, subject to and as part of the Limits Liability, any suit against the Insured seeking **damages** which are payable under the terms of this policy . . .

[DE 21-5].

In 2007, Bowman Heintz attorney Glenn Vician, a named partner in the firm, and his wife got into a dispute with Fiddler's Creek regarding the closing of a pre-construction contract to purchase a condominium in Fiddler's Creek [DE 21-8 at ¶ 23]. That dispute resulted in the Vicians filing a lawsuit seeking rescission of the contract against GBP Ltd. and GBP LLC in the Circuit Court of the 20th Judicial Circuit of Florida, *Glenn S. Vician and Dawn J. Vician vs. GBP Development, Ltd., d/b/a Gulf Bay, GBP Development, LLC, GP Peninsula, Ltd., and Woodward, Pires, and Lombardo,*

*P.A.*, Case No. 07-3816 [DE 21-8 at ¶ 23]. GBP filed a counterclaim and a separate

lawsuit in the 20th Judicial Circuit, *GBP Development, Ltd. vs. Glenn S. Vician and*

*Dawn J. Vician*, Case No. 07-4043 CA, seeking specific performance of the contract [DE

21-8 at ¶¶ 23 23-24].

On May 20, 2009, the Vicians and another couple, Richard and Kristi Lohmeyer,

filed a class action lawsuit against Fiddler's Creek LLC, GBP Development, Ltd., GBP

Development, LLC, The Golf Club at Fiddler's Creek, other related entities, and Aubrey

Ferrao in the United States District Court for the Middle District of Florida, Case No.

2:09-CV-00314-JES-DNF [DE 21-8 at ¶ 28]. The suit alleged that the Golf Club had

improperly allowed public play on the golf courses at Fiddler's Creek and that the

plaintiffs' initiation deposits had not been held in escrow [DE 21-8 at ¶¶ 28-36]. In late

December 2009, the parties settled the lawsuit, and the settlement agreement prohibited

disclosure of the terms, including payment terms – the Fiddler's Creek entities agreed to

make a series of payments to the plaintiffs – and included dismissal of the Vicians' state

court suit, GBP's state court suit, and the Vicians' and Lohmeyers' class action suit [DE

21-8 at ¶¶ 38-39; DE 21-4 at ¶ 7].

In late January or early February 2010, GBP Development and the other Fiddler's

Creek entities failed to make payments by the time prescribed under the settlement

agreement, and Bowman Heintz filed a motion in the District Court seeking to reopen

and resume the class action and to vacate the settlement agreement [DE 21-4 at ¶ 8; DE

21-8 at ¶¶ 40-42]. On February 3, 2010, the district court entered an order denying the

plaintiffs' motion to reopen the case and declining to review the terms of the settlement

agreement [DE 21-8 at ¶ 43]. However, in response to the filing of the motion for relief

regarding the alleged breach of the settlement agreement, GBP Development and the related Fiddler's Creek entities filed a new lawsuit in the Circuit Court of Collier County, Florida, against Glenn S. Vician, as lead counsel for the plaintiffs in the previously-filed class action suit, claiming that Vician had disclosed confidential portions of the settlement agreement when he filed the Motion for Relief in the District Court [DE 21-4 at ¶ 9].

On February 23, 2010, GBP Development and Fiddler's Creek, LLC, as well as other related entities, filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Middle District of Florida, captioned *In re Fiddler's Creek, LLC,* Case No. 9:10-BK-03846-ALP [DE 21-4 at ¶ 12; DE 21-8 at ¶ 8; DE 23-3]. On March 8, 2010, the bankruptcy court entered an Order Granting Debtor's Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases [DE 21-8 at ¶ 9].

On February 5, 2010, Bowman Heintz notified Valiant of GBP's lawsuit against it and Vician for breach of the settlement agreement by filing of the motion to reopen the Vician/Lohmeyer class action case [DE 21-4 at ¶ 10; DE 23-2]. Valiant responded that, subject to the reservation of its rights because of a number of concerns about coverage, it would undertake the defense of Bowman Heintz in the Collier County litigation [DE 21-4 at ¶ 11; DE 24-1 at 6]. A one-page claim supplement form, which appears to have been completed by Vician and submitted to Valiant with other paperwork regarding Bowman Heintz's application for malpractice coverage, dated March 25, 2010, indicated that GBP had filed a Chapter 11 bankruptcy petition in the Middle District of Florida on February 22, 2010 [DE 23-2 at 53].

On April 22, 2010, Bowman Heintz filed a class action lawsuit in the United States District Court for the Middle District of Florida, *Matthew Suffoletto, Raymond David, Steven Taub, and Stephen Shulman individually and on behalf of all persons similarly situated*, *v. Aubrey J. Ferrao*, Case No.: 2:10-CV-241-FTM-36-DNF [DE 21-4 at ¶¶ 14-15; DE 21-7; DE 23-4]. The lawsuit alleged that Ferrao had diverted and misappropriated escrow monies that the plaintiffs had deposited for memberships in the Fiddler's Creek golf club [DE 21-4 at ¶ 16; DE 21-7]. Ferrao was not a debtor in the bankruptcy action, but the complaint indicated that Ferrao was "the owner of a myriad of companies and entities that he operates in Fiddler's Creek," including GBP Development, Ltd. and GBP Development, LLC, and sought to pierce the corporate veil because the entities were, in fact, Ferrao's alter ego [DE 21-4 at ¶ 16; DE 21-7]. On April 30, 2010, the bankruptcy debtors' counsel sent a letter to Bowman Heintz demanding that it voluntarily dismiss the class action because it violated the automatic stay [DE 23-5 at 26-28], but Bowman Heintz did not do so.

On May 11, 2010, the bankruptcy debtors filed a Motion for an Order (I) Enforcing the Automatic Stay, (II) Awarding Sanctions for Intentional and Willful Violation of the Automatic Stay, and (III) Holding Plaintiffs Matthew Suffoletto, Raymond David, Steven Taub, and Stephen Shulman and Attorneys Robert Stochel, Glenn Vician, and Eric Vasquez in Contempt of Court [DE 21-4 at ¶17; DE 21-8; DE 23-5]. The motion alleged that the Suffoletto class action violated the automatic stay in bankruptcy because it sought an adjudication and determination of the Debtors' rights, obligations, and liabilities under the Golf Membership Agreements" [DE 21-8 at 3]. The motion asked the bankruptcy court to enforce the stay of bankruptcy and find the

Suffoletto class action suit void *ab initio*, to hold the Plaintiffs in the suit and their counsel in contempt for willfully violating the automatic stay of bankruptcy, and "impose sanctions in the form of attorneys fees, damages, and any other relief deemed appropriate" [DE 21-8 at ¶ 70]. The plaintiffs were not served with the Motion Regarding the Stay, but Bowman Heintz hired local counsel to appear at a hearing on the motion scheduled for June 4, 2010, and on the same day, filed a response to the motion to stay in the bankruptcy court [DE 21-4 at ¶¶ 18-21; DE 21-9]. During the hearing, the bankruptcy judge noted that the class action was not a lawsuit against the bankruptcy debtor, nor against the property of the debtor, as Ferrao was not named as a debtor in the bankruptcy. However, he took the matter under advisement "just to look at the issue of alter ego" [DE 21-4 at ¶ 23-24; DE 21-9 at 2].

On September 15, 2010, the bankruptcy court issued an order granting the motion to enforce the automatic stay of bankruptcy and reserving ruling on the debtor's request for sanctions and to hold the plaintiffs and their counsel in contempt of court [DE 21-4 at ¶ 26; DE 21-10; DE 23-6]. As the bankruptcy court noted, the same counts pleaded in the S*uffoletto* class action "were pled in a pre-petition related lawsuit brought by other plaintiffs and current Plaintiffs' counsel (as a Golf Club Member) against both the Debtors and Mr. Ferrao" and were essentially the same claims as had been previously raised, but were subject to the bankruptcy stay [DE 21-10 at 2-3, 5 at n.4]. On September 23, 2010, the bankruptcy court set a final evidentiary hearing on the motion for sanctions for December 17, 2010 [DE 23-7]. Following the ruling on the motion, Bowman Heintz sought new counsel to represent it and its clients [DE 21-4 at ¶27].

On December 7, 2010, for the first time, Bowman Heintz, by letter under Vician's signature, wrote to Valiant and informed it of "a claim that has arisen with respect to the bankruptcy of Fiddler's Creek, LLC., Case No. 9:10-bk-03846-ALP, filed in the U.S. Bankruptcy Court for the Middle District of Florida" [DE 21-1 at 8; DE 21-4 at ¶ 28]. Vician indicated that "[o]ur firm had filed a lawsuit against a non-debtor, Aubrey Ferrao in the U.S. District Court, Middle District of Florida, relating to the civil theft of golf escrow deposits" [DE 21-1 at 8]. The letter described the Motion to Enforce Automatic Stay and for Sanctions and attached a copy of the motion, and informed Valiant that the bankruptcy court had made a finding that the lawsuit violated the bankruptcy stay and that a Sanctions Hearing had been set for December 17, 2010, and that Bowman Heintz had hired local bankruptcy counsel to represent Bowman Heintz and its clients at the hearing [DE 21-1 at 8; DE 21-11].

On December 14, 2010, Valiant responded to Bowman Heintz's letter and indicated that based on its reading of the policy, its position was that it had no duty to defend or indemnify Bowman Heintz because "sanctions are specifically excluded under the definition of Loss," and accordingly, "the relief sought is not considered 'Loss' under the Policy," and reserved its rights to file a declaratory judgment action or to rely on any other applicable policy provision [DE 21-4 at ¶ 29; DE 21-12; DE 23-2 at 65]. The letter referenced Valiant claim number PGM-CLM-001114-10 [DE 21-12 at 1; DE 23-2 at 63]. However, Valiant's internal filekeeping note from December 15, 2010 indicated that Claim Number PGM-CLM-0002221-10, which was a "[c]omplaint for sanctions" was received in December 2010, and that Valiant reviewed the claim for coverage and relatedness to PGM-CLM-0001114-10 – the claim regarding the Collier County state

court litigation [DE 21-13]. Valiant indicated that a denial was in order, but that the "matter was in fact related to PGM-CLM-0001114-10 and should be handled under that file" [*Id.*]. Thereafter, Bowman Heintz continued to defend itself and the class action plaintiffs in the bankruptcy litigation [DE 21-4 at ¶ 30].

Following the December 17, 2010 sanctions hearing, the bankruptcy court issued an order on July 6, 2012, awarding sanctions against Bowman Heintz for willfully and intentionally violating the automatic stay [DE 23-8].

On February 15, 2013, Bowman Heintz, by counsel, sent a demand letter to Valiant, requesting that it "immediately assume the defense of the claims made against Bowman Heintz Boscia & Vician, P.C. and its lawyer, Glenn S. Vician, in the Florida litigation," pay all amounts due to the firm that Bowman Heintz hired to represent it in the matter, and "to reimburse and pay the law firm for the costs and expenses, including attorney fees, that it has incurred to date to defend itself and Mr. Vician in the Florida litigation" [DE 21-1 at 9; DE 21-4 at ¶ 33; DE 21-14].

On March 1, 2013, Bowman Heintz filed its complaint in this action, alleging breach of contract and seeking punitive damages because it alleges that Valiant willfully and intentionally refused to undertake its defense on the Motion for Sanctions [DE 1].

On March 20, 2013, Bowman Heintz and the bankruptcy debtors filed a motion asking the bankruptcy court to approve a settlement agreement, including the award of sanctions [DE 23-9]. On March 29, 2013, the bankruptcy court entered an order granting the Motion to Approve the Settlement Agreement [DE 23-10].

On April 2, 2013, Valiant filed its answer and asserted a counterclaim for declaratory judgment [DE 8].

II.      Summary Judgment Standards

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  So the Court must construe all facts in the light most favorable to the nonmoving party, making all legitimate inferences and resolving all doubts in its favor.  *Cung Hnin v. TOA, LLC*, 751 F.3d 499, 503-04 (7th Cir. 2014).  A "material" fact is one the substantive law identifies as impacting the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  When there is a genuine issue as to any such material fact and a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.  *Id.*  Conversely, where a factual record exists that would not allow a rational jury to find for the nonmovant, there is no genuine issue of fact for trial and summary judgment is appropriate.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Though the Court must construe the facts in the light most favorable to the non-moving party, she cannot simply rest on the allegations or denials contained in her pleadings: she has to present sufficient evidence to show the existence of each element of her case on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Though the parties in this case have filed cross-motions for summary judgment, this does not change the standard of review. *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009).  Cross-motions are treated separately under the standards applicable to each. *McKinney v. Cadleway Props, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir.2008).

III.    Policy Coverage

As an initial matter, and as agreed by both parties, Indiana law governs the present case, which is in front of this court by virtue of its diversity jurisdiction. *Nat'l Fire & Cas. Co. v. West*, 107 F.3d 531, 534 (7th Cir. 1997); *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). Accordingly, the court's duty is to figure out how the Indiana Supreme Court would resolve the dispute. *Nat'l Fire*, 107 F.3d at 534.

"Under Indiana law, the interpretation of an insurance policy presents a question of law to be decided by the court." *Id*. at 534-35, quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc*., 40 F.3d 146, 151 (7th Cir.1994). In the case of a policy dispute like this one, "the insured has the burden of proving that the coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable." *Nat'l Fire*, 107 F.3d at 535. Generally speaking, contracts for insurance are subject to the same rules of construction as other contracts, and if the policy's language is clear and unambiguous, it is given its plain and ordinary meaning; on the other hand, ambiguous terms are construed against the drafter, the insurer, and in favor of the insured. *Id*.

Here, the claim at issue is Bowman Heintz's claim for coverage for defending itself on the Motion for Sanctions filed in the Florida bankruptcy court, as well as indemnity. Bowman Heintz argues that its claim for coverage falls explicitly under the policy's terms, because Valiant has the " . . . duty to defend . . . any claim against the insured seeking damages which are payable under the terms of this Policy" [DE 20 at 14]. "Claim," Bowman Heintz argues, is clearly defined as "a demand received by the Insured

for money or services arising out of an act or omission, including personal injury, in rendering or failing to render legal services" [DE 20 at 14]. Thus, because it was engaged in the rendering of legal services, Bowman Heintz argues that because there is a possibility of coverage, the policy and Indiana law obligate Valiant to defend it under the Policy [DE 20 at 15].

Valiant has responded that it had no duty to defend for two reasons: first, that coverage is not appropriate on the claim because Bowman Heintz failed to give proper notice of the motion for sanctions; and second, that there is no coverage because sanctions are explicitly excluded from the definition of "damages" under the policy [DE 22 at 2]. The Court will address each of these arguments in turn.

1.      Notice

A quick review of the facts relevant to the timing of Bowman Heintz's notice to Valiant of the claim at issue here is in order. Bowman Heintz gave notice of the Florida state court litigation – the lawsuit filed by Fiddler's Creek for Bowman Heintz's alleged breach of the confidentiality provisions of the settlement agreement -- in February 2010. Valiant responded on February 18, 2010 that it would defend Bowman Heintz on that claim, subject to Bowman Heintz reaching the deductible amount under the policy. Bowman Heintz then filed a class action complaint in Florida federal court on behalf of Suffoletto and other plaintiffs on April 22, 2010. The bankruptcy debtors' counsel sent a letter to Bowman Heintz demanding the withdrawal of the class action suit, and after Bowman Heintz did not do so, the debtors filed the motion to enforce the automatic stay and for sanctions on May 10, 2010. The first hearing on the motion for sanctions was held on June 4, 2010. The bankruptcy court issued its order determining that the class

action suit violated the automatic stay on September 15, 2010, and reserved ruling on the sanctions issue. The following week, the bankruptcy court issued an order setting the motion for sanctions for a hearing on December 17, 2010. Bowman Heintz did not provide notice to Valiant about the pending motion for sanctions until December 7, 2010. Valiant denied coverage on December 14, 2010.

Valiant claims that under Indiana law, proper notice of a claim is a condition precedent to coverage [DE 22 at 3-4, citing *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984)[1]]. Additionally, the policy itself states that "[t]he Insured, as a condition precedent to obligations of the Company under this Policy, shall give written notice to the Company during the policy period . . . of any claim made against the Insured," and "of the Insured's receipt of any notice, advice, or threat, whether written or verbal, that any person or organization intends to hold the Insured responsible for any alleged breach of duty" [DE 22 at 3].

Valiant argues that Bowman Heintz failed to notify it of the motion for sanctions in a timely manner, and thus, did not satisfy the condition precedent to coverage. Valiant's position is that because it didn't know about the motion for sanctions for months after it was filed, after the preliminary hearing had been conducted and the bankruptcy court had granted the motion to enforce the stay, and until the eve of the hearing on the part of the motion that requested contempt sanctions, it simply *couldn't* conduct a defense, and the terms of the policy and Indiana law provide that in such situations, there is no coverage under the policy. Valiant is correct that under Indiana

---

[1] In *Miller*, the Indiana Supreme Court considered three separate cases all involving the issue of notice to insurers. In its brief, Valiant refers to *Miller* by the name of one of the three consolidated cases, *Indiana Ins. Co. v. Williams* [DE 22 at 4]. The Court refers to the case as *Miller v. Dilts*, as have other courts that cite the case.

law, notice is a condition precedent to coverage, a "threshold requirement which must be met before an insurer is even aware that a controversy or matters exists." *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1271 n.1 (Ind. 2009) (citation and quotation omitted). "The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss." *Miller* 463 N.E.2d at 265; *see also Republic-Franklin Ins. Co. v. Silcox*, 92 F.3d 602, 604 (7th Cir. 1996) ("In return for its agreement to indemnify the policyholder, the insurer contracts for a right to prompt notice so that it can do the necessary things to avoid or minimize liability"); *Officer v. Chase Ins. Life and Annuity Co.*, 541 F.3d 713, 718 (7th Cir. 2008) ("[P]rompt notice . . . serves an important purpose, in that it allows the insurance company to begin to investigate and defend a claim").

From a common sense perspective, this makes perfect sense: if Valiant wasn't told that there was a game to play, it can't be faulted with failing to suit up. As the Indiana Supreme Court noted in *Miller*, many liability insurance policies – like the one at issue here -- explicitly require the insured to provide the insurer with notices or papers relating to claims, and make such notification a condition precedent to coverage. "Where this is the case, compliance with such a condition is essential in the absence of a sufficient excuse or a waiver, in order to permit a recovery on the policy." 463 N.E.2d at 264, quoting *Lomont v. State Farm Mut. Auto Ins. Co.*, 151 N.E.2d 701, 704 (Ind. Ct. App. 1958). And in cases where the policy itself does not give a prescribed length of time by which the insured must provide notice, timeliness is then "*measured* by

prejudice—if the insurance company is prejudiced, the notice is not timely." *Officer*, 541

F.3d at 718.

The Seventh Circuit Court of Appeals has helpfully summarized the approach

outlined by *Miller*:

> . . . the duty to notify must be strictly observed . . . any substantial delay in
> notification constitutes a breach; but they have also held that breaches of
> the duty can be excused when they cause no prejudice to the insurer. If an
> insured breaches the duty but seeks to rely on the excuse in court, he or
> she must offer evidence showing that the insurer suffered no prejudice.
> Without any such evidence, courts will presume prejudice as a matter of
> law," and the insurer is not required to provide coverage because the
> insured has failed to satisfy a condition precedent to coverage.

*Republic-Franklin*, 92 F.3d at 604; *see also Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909

N.E.2d 997, 1005 (Ind. 2009) (". . . prejudice to the insurer is presumed by the insured's

late notice, but the insured may rebut the presumption with evidence showing that the late

notice created no prejudice").

Here, the policy at issue specifically required Bowman Heintz to provide Valiant

with written notice of the receipt of "any notice, advice or threat, whether written or

verbal, that any person or organization intends to hold the Insured responsible for any

alleged breach of duty" [DE 21-5 at 11]. Bowman Heintz was first notified of the

"threat" that it would be held responsible for the breach of a duty as early as April 30,

2010, when it received the bankruptcy debtors' counsel's letter. The letter constitutes a

"threat" of the kind outlined in the policy. But even construing that piece of evidence in

the light most favorable to Bowman Heintz, if it did not consider the letter a "threat," it

was certainly on notice when it received the motion for sanctions, which was filed on

May 10, 2010, though Bowman Heintz argues that it wasn't served with the motion.[2]  It is clear from the record, however, that even if it was not served, Bowman Heintz was certainly *aware* of the filing of the motion on or before June 4, 2010  -- the date on which it appeared, through local counsel, in front of the bankruptcy court to defend itself on the motion to enforce the automatic stay and for contempt sanctions and on which it filed a written response to the motion.  The bankruptcy court granted the motion to enforce the automatic stay on September 15, 2010.  At the *very* least, it was absolutely in receipt of a "notice, advice, or threat" that it was perhaps going to be held "responsible for any alleged breach of duty" on September 23, 2010, when the bankruptcy court set the motion for sanctions for a December 17, 2010 hearing.  Bowman Heintz did not notify Valiant of that order until December 7, 2010 – nearly three months later, and only ten days before the hearing on the motion.

In *Miller*, the Indiana Supreme Court considered the notification requirement in three separate cases involving auto accidents: in one case, the insurer received no notice of the accident until six months afterward and ten days after the filing of a lawsuit; in the second, the insurer was notified of the accident after a month but was not informed of a lawsuit until after default judgment was entered; and in the third case, the insurer was given notice five days after a lawsuit was filed and nearly seven months after the accident had occurred.  463 N.E.2d at 266.  In each of the three cases, the Court found that timely notice was not given.  *Id.*  Here, as discussed above, many months before Bowman

---

[2] Though Bowman Heintz was not formally served with the motion for sanctions, there is no dispute that it did in fact have notice of the motion, as evidenced by the fact that it retained counsel to represent it at the June 4 hearing on the motion, appeared at the hearing, and filed a written response to the motion.  The policy terms do not require the insured to merely notify the insurer once it received formal service of process – rather, it required the insured to notify the insured of "any threat" that it might be held liable for breach of "any duty."  Accordingly, the formal receipt of process is not relevant here.

Heintz informed Valiant of the motion for sanctions, it knew that it was at risk of being held in contempt. Under *Miller*, it is clear that Bowman Heintz's notice was untimely.

Valiant has demonstrated that Bowman Heintz unreasonably delayed in providing notice of the motion for sanctions to it, depriving it of its opportunity to investigate the claim and control the defense of the matter. Accordingly, the Court may presume prejudice to Valiant. The burden thus shifts to Bowman Heintz to articulate evidence showing that Valiant was not in fact prejudiced. It has not done so.

First, Bowman Heintz argues that it provided notice of the Collier County state court litigation in February 2010, and because that state court litigation was related to the filing of the class action lawsuit, Valiant was on notice of the contempt motion claim because it "related back" to the Collier County litigation [DE 25 at 12]. This argument is meritless. The policy itself defines "related claim" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services" [DE 21-5 at 9]. The claim that Bowman Heintz made in February 2010 related to a Florida state court case, filed by a number of Fiddler's Creek entities, for a breach of the terms of the settlement agreement that related to a class action lawsuit involving Glenn Vician, his wife, and another couple. The motion for sanctions, on the other hand, though involving some of the same players and relating to some of the same events, concerned a wholly different litigation: the class action that Vician filed, on behalf of completely different plaintiffs, that was then found to be in violation of the automatic bankruptcy stay (which was *also* a separate litigation). The problem with Bowman Heintz's argument here is that it fundamentally misunderstands the policy terms regarding "related acts or omissions in the rendering of legal services." The separate

*lawsuits*, while dealing with the same or similar *underlying* events, did not all arise from related "acts or omissions in the rendering of legal services." To the contrary, the Collier County litigation arose from Bowman Heintz's alleged breach of a settlement agreement. The motion for sanctions arose from Bowman Heintz's separate violation of the automatic stay of bankruptcy by the filing of a different class action lawsuit. Nothing about the notice provided in February 2010 could have possibly alerted Valiant to the underlying claim for which Bowman Heintz now seeks defense and indemnity.

Second, Bowman Heintz argues that the bankruptcy court's statements at the June 4, 2010 hearing on the motion to enforce the automatic stay and for contempt sanctions somehow justified its failure to notify Valiant of the pending motion [DE 25 at 17-18]. At the June 4, 2010 hearing on the motion regarding stay, the bankruptcy court stated on the record that it intended to take the matter under advisement to "look at the issue of alter ego," that the matter was "not a lawsuit against the Debtor, it's not against property of the Debtor," but that the court intended to look at whether "the torts that are being asserted in the complaint offer a twist that change [sic] the ordinary black letter law that this is not . . . against the property of the Debtor." [DE 21-4 at ¶ 23-24; DE 21-9]. Bowman Heintz argues that it was somehow excused from providing notice earlier than it did because the bankruptcy court's statement is "a clear indication on June 4, 2010 that there was no stay violation" [DE 20 at 7]. Though Bowman Heintz never explicitly makes the point, this Court understands the argument to mean that somehow, Bowman Heintz was thus under the impression that it was going to win the motion to enforce the automatic stay, so there was no need for it to notify Valiant of the claim.

This argument is a non-starter: it represents a fundamental misapprehension of the policy terms. The policy explicitly states that the insured is to notify Valiant of "receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the Insured responsible for any alleged breach of duty." Bowman Heintz appears to read in some kind of term indicating that it need provide notice to Valiant only in the case that the insured thinks that the claim against it is likely to succeed on the merits. However, there is no such language, and the terms are clearly to the contrary: the policy is clear and unambiguous that as a condition precedent to coverage, Bowman Heintz was required to notify Valiant of "any notice, advice, or threat" that it could be held responsible for a breach of any duty, and the use of the terms "any" and "threat" indicate that the instigation of a formal lawsuit, receipt of process, or indication from a presiding court that the insured is likely to be held responsible are far beyond what is required to trigger the insured's notice obligation.[3]

In other words, Bowman Heintz's parsing of the bankruptcy court's statements is simply not relevant here, because the notice provisions of the policy are not triggered by some kind of credible threat that the insured will be held liable. Rather, as a condition precedent to coverage, the policy terms unambiguously state that notice must be given once the insured receives "any" threat or other indication that any party intends to hold it responsible for "any" breach of duty.

---

[3] Additionally, and worthy of only a brief mention, the bankruptcy court's on the record statement that it was taking the matter under advisement is, in itself, an obvious indication that Bowman Heintz could, in fact, lose the motion. Second, and without getting into the details of the underlying lawsuit, the Court's statement is certainly *not* an indication that Bowman Heintz could not be liable, as it now claims. To the contrary, the statement seems to indicate that the alter ego claims alleged in the class action complaint would somehow alter the implications of not explicitly naming the bankruptcy debtors as the defendants in the lawsuit.

Moreover, as a matter of law, Bowman Heintz's undertaking of its defense against the motion without notifying Valiant of the claim nullifies its notice as a matter of law. This case bears similarity to *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513 (Ind. Ct. App. 2000). In *Paint Shuttle*, a law firm sued its malpractice insurance carrier for breach of the insurer's duty to defend and indemnify. The law firm had orally notified the insurer of the malpractice suit soon after it was filed, but waited to provide the written notice required under the policy until several months later, after the firm had chosen to defend the early stages of the malpractice suit on its own, without the insurer's assistance. In that case, the court held that the law firm's notice to the insurer was insufficient because the firm voluntarily undertook defense of the suit "without allowing Continental to exercise its rights of investigation and defense of a claim under the malpractice policy," depriving the insurer of its ". . . right to promptly investigate a claim or to control the defense of a lawsuit with which it might be subjected to liability as an insurer of an insurance policy." *Id.* at 520-21. The *Paint Shuttle* court held that there are two requirements for notice to be proper under an insurance policy like the one in place here: first, notice "must be . . . timely as proscribed by the language of the insurance policy," and second, it must be 'true' in the sense that the insured allows the insurer to exercise its rights of investigation and defense of a claim under the policy." *Id.* at 521. Accordingly, "[i]t follows that if an insured notifies an insurer of a claim, but defends the claim in contravention of an insurance company's rights of investigation and defense, the notice is insufficient for purpose of obtaining coverage under an insurance policy." *Id.* at 521.

This is the very situation presented here: in lieu of reporting the claim to Valiant, Bowman Heintz chose to defend itself in the bankruptcy court when the motion to

enforce the stay and for contempt sanctions was filed. By doing so, it took away Valiant's right as the insurer to investigate and defend the claim, meaning that notice, even if timely, was not "true."

Bowman Heintz's failure to give "true" notice is fatal to its claims here for two reasons. First, unlike some of the insurance policies discussed in the case law outlined above, there is no specific mention in the policy at issue here about "prompt" notice or prescribing a time for giving notice. Though it seems abundantly clear from the terms of the policy that "prompt" notice was clearly what was intended (and Bowman Heintz does not even attempt to argue otherwise), under Indiana's rules of contract interpretation, any ambiguity in a policy term must be resolved against the insurer, *Nat'l Fire*, 107 F.3d at 535, though "[m]ere controversy doesn't establish ambiguity; ambiguity is established 'only if reasonable persons would differ as to the meaning.'" *Lafayette Life Ins. Co. v. Arch Ins. Co.*, 784 F. Supp. 2d 1034, 1040 (N.D. Ind. 2011), quoting *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005). Here, even if the Court were to find that reasonable people could somehow find that the terms of the policy did not require "prompt" notice (which it does not), and then construe the policy in Bowman Heintz's favor on this point, even if Bowman Heintz's notice was considered timely, it wouldn't be true, because it deprived Valiant of its rights to investigate and defend – the litigation of the motion was well underway and Bowman Heintz had already been subject to an adverse ruling in the matter by the time Valiant was notified that the motion was pending. *See Paint Shuttle,* 733 N.E.2d at 521.

Second, even if the Court were to accept Bowman Heintz's argument regarding the relatedness of the two claims because Valiant indicated that they should be handled

under the same file number *or* because the matters were related under the terms of the policy, the notice is still defective: Bowman Heintz's actions in conducting the bankruptcy court litigation without informing Valiant so that it could investigate and conduct the defense of the matter renders the notice ineffectual.

The point of the "related claims" term is to provide the insured a longer period of coverage for subsequent acts that it reports to the insurer, to protect the insured in the case that the act or omission that was the source of the initial claim occurred during the policy period, but subsequent claims regarding the *same* act or omission occurred outside the policy period. *See Wellpoint, Inc. v. Nat'l Union Fire Ins. Co.*, 952 N.E.2d 254, 262 (Ind. Ct. App. 2011), citing *FDIC v. Booth*, 82 F.3d 670, 678 (5th Cir. 1996) ("[I]n claims-made policies, the notice requirement actually serves to aid the insured by extending claims-made coverage beyond the policy period"). It does not somehow mean that Bowman Heintz is absolved of its duty to notify its insurer that it was in peril of being held in contempt of court as part of a bankruptcy that the insurer has no notice of, and may conduct the defense of those contempt proceedings without notice to the insurer.

2.      Sanctions

Moreover, even if the Court were to find that Bowman Heintz provided Valiant with appropriate notice as required under the policy or assuming that Bowman Heintz could show that Valiant was not prejudiced by the delayed notice and that the condition precedent to coverage was satisfied, summary judgment for Valiant would still be appropriate, because the terms of the policy do not require coverage for sanctions [DE 21-5 at 7].[4] Section I.A. of the policy, titled "Coverage," explicitly states that "[t]he

_____

[4] Though not addressed by the parties, Valiant did not initially deny coverage on the basis of late notice: it denied the claim because sanctions were not covered under the policy. However,

Company will pay on behalf of the Insured sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of a claim that is first made against the Insured and reported to the Company during the policy period."  And as to the duty to defend, the Policy states that "[t]he Company shall have the right and duty to defend . . . any suit against the Insured *seeking damages which are payable under the terms of the policy*" [DE 21-5 at 6, emphasis added].  In other words, coverage only applies – as to both defense and indemnity – where the insured has to pay or has sought against it "damages," a term explicitly defined under the policy.  As pertinent here, under the policy, "damages" specifically "**. . .** do not include . . . civil or criminal fines, sanctions, penalties, or forfeitures" [DE 21-5 at 7].

Valiant argues that because the policy terms specifically provide that "sanctions" are not "damages," it had no duty to defend or indemnify Bowman Heintz on the motion for sanctions.  Bowman Heintz asserts that the duty to defend is broad, that it was engaged in the rendering of legal services, that the motion for contempt sanctions sought actual damages in addition to sanctions, and that Valiant was accordingly required to defend it [DE 25 at 15, 22-23].

Bowman Heintz is correct that "[t]ypically, an insurer has a duty to defend its insured against suits alleging facts that might fall within the coverage. While the insurer does not have an unconditional duty to defend, the insurer's duty is expansive, since the duty to defend is considerably broader than the duty to indemnify." *Stroh Brewing Co.*,

---

it bears noting here that an insurer's denial of coverage on grounds other than deficient notice does not rebut the presumption of prejudice from late notice as a matter of law.  *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind. 2009) ("There is no reason why an insurer should be required to forego a notice requirement simply because it has other valid defenses to coverage").

127 F.3d at 566, citing *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d

891, 892 (Ind.1996); *see also Nat'l Fire*, 107 F.3d at 535, quoting *Terre Haute First Nat'l*

*Bank v. Pac. Emp'rs Ins. Co.*, 634 N.E.2d 1336, 1339 (Ind. Ct. App. 1993) ( "[a]n

insurer's duty to defend its insureds against suit is broader than its coverage liability or

duty to indemnify").  However, under Indiana law, "the insurer's duty to defend" is

dependent upon the "underlying nature of the claim, and not its merits."  *Nat'l Fire*, 107

F.3d at 535 (internal quotation omitted).  The insurer is only required to defend the

insured where "the allegations of the complaint, including the facts alleged . . . if proved

true, coverage would attach."  *Stroh Brewing Co.*, 127 F.3d at 566.  In other words, in a

policy dispute, if ". . . the underlying factual basis of the complaint, even if proved true,

would not result in liability under the insurance policy, the insurance company can

properly refuse to defend."  *Nat'l Fire*, 107 F.3d at 535, quoting *Wayne Twp. Bd. of Sch.*

*Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995) ("When the

nature of the claim is obviously not covered by the policy of insurance, there is no duty to

defend").

　　　　Here, even if the allegations in the motion for contempt sanctions were true and

Bowman Heintz was in violation of the automatic stay of bankruptcy, in contempt, and

responsible for sanctions (as the bankruptcy court here eventually found that it was,

though that is not relevant to the matter before this court), Valiant is correct that there is

no coverage under the policy.  The policy is clear that for coverage to apply in terms of

both defense and indemnity, the insured must be in peril of having to pay damages as

defined under the policy, which, in this case, specifically excludes sanctions.  Bowman

Heintz argues that in addition to sanctions, the Debtors sought actual damages and

attorneys' fees, which would properly be considered "damages" under the policy, triggering Valiant's duty to defend [DE 25 at 19-21]. Valiant counters that Bowman Heintz has misrepresented the relief requested in the debtor's motion, and that the motion itself asks the bankruptcy court to "hold the Plaintiffs and the Plaintiffs' Counsel in contempt for willfully violating the Automatic Stay, and impose sanctions in the form of attorneys fees, damages and any other relief deemed appropriate" [DE 28 at 5].

Valiant has the better of the argument here: the motion is clear that while it uses the term "actual damages," that request explicitly refers to the debtors' statement that they had been damaged as a result of the Plaintiffs' willful violation of the Automatic Stay, including, without limitation, the attorneys' fees, actual damages, and costs associated with the prosecution of this Motion" [DE 21-8 at ¶¶ 69-70]. The debtors then specifically requested that the bankruptcy court ". . . hold the Plaintiffs and the Plaintiffs' Counsel in contempt for willfully violating the Automatic Stay, and *impose sanctions in the form of attorneys fees, damages and any other relief deemed appropriate*" [DE 21-8 at ¶ 70, emphasis added]. In other words, the damages sought were all explicitly labeled sanctions – not, as Bowman Heintz would have the court believe, damages of the kind outlined as payable under the policy. Accordingly, the denial of coverage was appropriate.

IV.    Bad Faith

Finally, there is the matter of Bowman Heintz's claim that Valiant acted in bad faith in denying coverage for the Motion for Sanctions. Under Indiana law, an insurer has a duty to deal with its insured in good faith. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). "[A] good faith dispute about whether the insured has a valid claim

will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith," but "an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty." *Id.* To prove that an insurer acted in bad faith in denying a claim, the insured must establish, by clear and convincing evidence, that the insurer knew that it had no legitimate basis upon which to deny liability, but did so anyway. *Id.*

Here, there is simply no evidence whatsoever that Valiant denied coverage, knowing that it had no legitimate basis for doing so. As discussed at length above, Valiant's denial of the claim in this case was proper on two grounds: first, because it had insufficient notice, and second, because sanctions were explicitly excluded as damages under the policy. Accordingly, Bowman Heintz has failed to meet its burden on this claim, and summary judgment is appropriate in favor of Valiant.

## CONCLUSION

For the foregoing reasons, Bowman Heintz's motion for summary judgment [DE 19] is **DENIED**, and Valiant's cross-motion for summary judgment is **GRANTED** [DE 22]. The Clerk is **DIRECTED** to enter judgment in favor of the Defendant and against the Plaintiff.


**SO ORDERED**.
ENTERED: August 1, 2014

s/ Jon E. DeGuilio
JON E. DEGUILIO, JUDGE
UNITED STATES DISTRICT COURT

.